Maxie Clinton JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–91–00457–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 17, 1992.

Rehearing Denied Jan. 14, 1993.

Petition for Discretionary Review
Granted in Part and Refused
in Part May 12, 1993.

Charles Freeman, Houston, for appellant.

Rikke Burke, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for the offense of delivery of a controlled substance. The jury assessed punishment at six years probation. We affirm.

On January 25, 1990, Officer Davis, an undercover Houston Police Officer, approached a residence at 11002 Long Gate ·Street to conduct a narcotics investigation. Members of the Southeast Tactical Unit Raid Team waited in a van a few blocks away. Officer Davis knocked on the door, and was asked by Appellant what he needed. The officer replied that he wanted a "dime," which is street slang for ⅛ of a gram of crack cocaine. Appellant told Ronald Harden, a State's accomplice-witness, to get the man "what he wanted." Harden got a rock of cocaine and gave it to the officer. The officer purchased the cocaine with a previously photocopied ten dollar ($10) bill. Officer Davis returned to his car, and radioed to the Raid Team that he had made a narcotics purchase.

The Raid Team immediately approached the residence at 11002 Long Gate. The door was closed and locked. Without knocking on the door or requesting permission to enter, the officers used a battering ram to break down the door and gain entry. Once inside, they found Appellant standing next to the kitchen stove, which had crack cocaine lying on top. Appellant was initially placed under arrest for possession of a controlled substance. When searched, the police found the previously photocopied ten dollar ($10) bill in his pocket. The officers discovered crack cocaine, a sawed-off shotgun and a .25 caliber automatic pistol at the scene of the arrest. Appellant brings thirty-nine points of error.

In points of error two through twenty-nine, Appellant complains that he has been denied a fair trial because resummoned and/or rescheduled jurors were placed in his array. Appellant has shown no violation of either State or Federal law by the Court in allowing individuals who had rescheduled their jury duty, to serve on this array. Further, he has demonstrated no harm. Being rescheduled for jury duty does not make an individual unfit for service. Further, it in no way affects one's ability to render a true and fair verdict. Appellant's attorney has brought these identical issues before this Court in two prior appeals. In two unpublished opinions [1], this Court ruled that a defendant is not denied a fair trial simply because individual jurors on his panel have been rescheduled for jury duty, or previously excused from jury duty.

Appellant also made challenges to the array and challenged individual jurors for cause. A challenge to the array must be made pursuant to TEX.CODE CRIM.PROC.ANN. art. 35.07 (Vernon 1992). Article 35.07 provides:

> Each party may challenge the array only on the ground that the officer summoning the jury has willfully summoned jurors with a view to securing a conviction or acquittal.

Appellant neither presented evidence to the trial court which would comply with Article 35.07, nor evidence which would establish a valid challenge for cause. Accordingly, we overrule points of error two through twenty-nine.

In his first point of error, Appellant contends that he has been deprived of

1. *Carl Williams v. State,* No. C14–90–00705–CR, 1992 WL 5524 (Tex.App.—Houston [14th Dist.] January 16, 1992 pet. ref'd) (not designated for publication); and *Robert Harley McCray v. State,* No. A14–89–00271–CR, 1991 WL 235281 (Tex.App.—Houston [14th Dist] November 14, 1991 pet. ref'd) (not designated for publication) *cert. denied* —— U.S. ——, 113 S.Ct. 623, 121 L.Ed.2d 555 (1992).

a sufficient record on appeal. He requested that the Clerk of the trial court include certain juror information in the transcript in order to support his position that the make-up of the array denied him a fair trial. Appellant presented none of this information to the trial court. If an appellant desires an appellate review of evidence, he *must* have offered that evidence at the trial court level for inclusion in the record on appeal. *Miller v. State*, 736 S.W.2d 643, 648 (Tex.Crim.App.1987). It is evident from the record that the evidence Appellant requested be included as part of the transcript was never entered into evidence. Therefore, that information is not before this Court for our review. We overrule Appellant's first point of error.

■ In point of error number thirty, Appellant claims that the trial court erred in overruling his "best evidence" objection to State's Exhibit 1.

State's Exhibit 1 was a photocopy of the ten dollar ($10) bill used to make the narcotics purchase. Officer Davis testified that the copy "fairly and accurately portray[ed] the $10 ... bill ... used on that day." He stated that the original bill was unavailable because the "money" is reused until it is either lost or returned to the City at the end of the month. He did not know its whereabouts at the time of trial. Appellant objected to the admission of the copy, based upon the "best evidence rule."

■ TEX.R.CRIM.EVID. 1004 provides that "the original is not required and other evidence ... is admissible if ... [the] originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." The purpose of Rule 1004 is to allow the admission of the "best *obtainable* evidence of [a document's] contents, if the document cannot as a practical matter be produced." *Ortiz v. State*, 651 S.W.2d 764, 766 (Tex.Crim.App.1983). Officer Davis established that the loss of the original was not intentional, and that State's Exhibit 1 was a fair and accurate copy. We overrule Appellant's thirtieth point of error.

■ In his thirty-first point of error, Appellant contends that the State violated TEX.R.CRIM.EVID. 611, by allowing Officer Davis to compare an item in evidence with an item not in evidence.

During redirect examination, the prosecutor asked Officer Davis to compare the serial number on State's Exhibit 1 with the serial number in the offense report, which identified the bill found in appellant's pocket. The Officer, without reading the serial number aloud, testified that they were "one [in] the same numbers." Appellant's counsel objected that this was beyond the scope of Rule 611.

TEX.R.CRIM.EVID. 611 provides that:

if a witness uses a writing to refresh his memory ... [then] an adverse party is entitled to have the writing produced ... to inspect it, to cross examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

■ Rule 611 is an "entitlement" rule. When invoked, it entitles a party to production, inspection, cross examination on and introduction of the writings reviewed by a witness. *Young v. State*, 830 S.W.2d 122, 124 (Tex.Crim.App.1992).

The offense report was produced for the Appellant, and he had ample opportunity to inspect it, cross examine Officer Davis about it, and introduce into evidence any relevant portions. It was not error for the Officer to check the report and testify that the serial number in the report and on State's Exhibit 1 were identical. Further, Appellant has shown no harm. We overrule point of error thirty-one.

■ Appellant asserts in points of error thirty-three, thirty-five and thirty-six that the admission of testimony regarding a sawed-off shotgun and a .25 automatic pistol found at the scene of the arrest violated TEX.R.CRIM.EVID. 403. He claims that any probative value was substantially outweighed by the danger of unfair prejudice.

■ It is the general rule in Texas that the State is entitled to show the circumstances surrounding an arrest. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.

Crim.App.1985). The admission of such evidence is reviewed under an abuse of discretion standard. *Id.*

Where possession of a weapon is involved ... such fact is usually relevant as a circumstance of the offense because arguably the weapon is intended by the defendant to be used, exhibited or simply possessed for protection or threat.

*Couret v. State,* 792 S.W.2d 106, 108 (Tex.Crim.App.1990). The discovery of these weapons was contemporaneous with the discovery of the narcotics and the arrest of the Appellant. We cannot say that the trial court abused its discretion by admitting testimony concerning all items discovered during the arrest. Accordingly, we overrule points of error thirty-three, thirty-five and thirty-six.

■ In his thirty-fourth and thirty-seventh points of error, Appellant claims that the trial court harmed his defense by making improper remarks to appellant's trial counsel. The Court requested at one point that defense counsel "Please frame your question. Quit trying to hide the bull and let's work through it." Later, the Court instructed defense counsel to have his exhibits pre-marked, stating, "in this Court the rules have been posted for two years. We pre-mark. No one in this courtroom needs to stand around watching you mark exhibits."

■ To constitute reversible error, a comment by the trial court must be "reasonably calculated to benefit the State or [to] prejudice the defendant's rights." *Kincade v. State,* 552 S.W.2d 832, 835 (Tex.Crim.App.1977). These statements, at most, were unguarded responses to Appellant's repetitious questioning and delay. Appellant's attorney should have known the rules of the Court and abided by them. We overrule points thirty-four and thirty-seven.

■ In point of error thirty-eight, Appellant contends that the trial court violated TEX.CODE CRIM.PROC. art. 36.25, by sending all of the exhibits to the jury room *before* the jury requested the evidence. He claims that the Court's actions were a "comment on the evidence."

Article 36.25 provides that "upon request" any exhibits admitted into evidence shall be submitted to the jury. In the case of *Robinson v. State,* 704 S.W.2d 565 (Tex. App.—Beaumont 1986, pet ref'd.), the trial court sent Exhibits 3 through 8, out of Exhibits 1 through 8, to the jury room, without request. The appellate court held that although the procedure did not "strictly comply with *article 36.25* it did not amount to reversible error." The Court reasoned that the act could "in no way be construed as a 'comment on the evidence' or a 'remark calculated to convey to the jury his opinion of the case.'"

In the case at bar, the Judge did not single out particular exhibits to be sent to the jury, nor did he in any way indicate to the jury the importance of any one piece of evidence over another. Although his actions did not strictly comply with article 36.25, we do not find them to be a "comment on the evidence." We overrule Appellant's thirty-eighth point of error.

■ In his thirty-ninth point of error, Appellant claims that he has been deprived of an adequate record on appeal, because the court reporter failed to include certain exhibits in the record.

■ Appellant timely requested that "all exhibits whether admitted or not" be included in the transcript. No exhibits have been brought to this Court. Appellant has the duty to check the record before submission and make certain that it is complete. It is not enough to merely request that the exhibit be included. Further, Appellant has failed to show any harm resulting from any exhibit missing from the record. Therefore, we overrule point of error thirty-nine.

■ Finally, in point of error thirty-two, Appellant maintains that the court erred in admitting evidence of the cocaine, the pistol, the shotgun and the ten dollar bill taken from the home. He contends they were illegally seized. This is the only point of error that has any merit, and it

should have been point of error number one.

■ It is uncontroverted that this evidence was taken without a warrant. "Before items of property seized incidental to a warrantless arrest may become admissible evidence, the prosecution must first establish that the warrantless arrest was permissible under an exception provided by law to the general rule that a police officer must ... obtain an arrest warrant before arresting an individual." *Green v. State*, 727 S.W.2d 263, 265 (Tex.Crim.App.1987). The State claims that the arrest was permissible pursuant to TEX.CODE CRIM.PROC. ANN. art. 14.01 (Vernon 1992), which provides that "a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." However, when the police enter a private residence, article 14.01 is subject to article 14.05 within that same chapter.

TEX.CODE CRIM.PROC.ANN. art. 14.05 (Vernon 1992) provides:

In each case enumerated where arrests may be lawfully made without warrant, the officer or person making the arrest is justified in adopting all the measures which he might adopt in cases of arrest under warrant, *except that an officer making an arrest without a warrant may not enter a residence to make the arrest* unless: (1) a person who resides in the residence consents to the entry; or (2) exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant.

(emphasis added). In light of this article, even when an offense has been committed in an officer's view, if the offender enters a residence before capture, the officer must get a warrant, gain consent to enter the residence, or show exigent circumstances for his entry.

■ There is no evidence in the record of a warrant or consent. In order for exigent circumstances to apply there must be evidence that it was reasonable for the police to conclude that: (1) the offender was about to escape; (2) evidence or contraband was about to be destroyed; (3) the officers were in danger; or (4) the officers needed to render aid or assistance to a person in the residence. *McNairy v. State*, 835 S.W.2d 101, 107 (Tex.Crim.App.1991); *Dejarnette v. State*, 732 S.W.2d 346, 349 (Tex.Crim.App.1987).

There was no testimony in this case that any of the officers reasonably believed that the suspect was about to escape or that evidence was being destroyed. Further, there was no testimony showing that the officers feared for their safety, or the safety of others. We find that the initial entry into the home was unlawful, and therefore, all evidence seized at the scene of the arrest was illegally obtained. It was error for the Court to admit this evidence.

■ Having found error, it is necessary for us to conduct a harmless error analysis. The function of an appellate court's harmless error analysis is not to determine how the appellate court would have decided the facts, but to determine to what extent, if any, [the] error contributed to the conviction or the punishment.

■ *Harris v. State*, 790 S.W.2d 568, 585 (Tex.Crim.App.1989). The focus is not on whether there was sufficient evidence to convict, but rather is on whether there is a "reasonable possibility that the evidence complained of ... contributed to the conviction." *Id*, citing *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). In this case, we must determine whether the jury found the Appellant guilty because of evidence that a shotgun, pistol and cocaine were found at the scene of the arrest.

It is important to remember that Appellant was tried for delivery of cocaine. All elements of the delivery were established by the State's first two witnesses, Officer Davis and Ronald Harden. Neither witness testified about the weapons or cocaine seized at the scene. The testimony concerning the weapons and seized cocaine was not tied to the delivery, but only to the arrest. The proof of Appellant's guilt of the crime with which he was charged was overwhelming. We do not believe that the admission of the seized evidence influenced the jury's determination of guilt for deliv-

ery of cocaine. Therefore, we find beyond a reasonable doubt that the error made no contribution to the conviction. Based on the light sentence of six years probated, we also find beyond a reasonable doubt that this evidence did not contribute to or increase Appellant's punishment.

Accordingly, we affirm the trial court's judgment.